IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ROBERT M. TAYLOR, III,  et al.　　　)
　　　　　　　　　　　　　　　　　)
　　　　　PLAINTIFFS,　　　　　　　)
　　　　　　　　　　　　　　　　　)　　CASE NO.
VS.　　　　　　　　　　　　　　　　)　　1:23-cv-00047-JRH-BKE
　　　　　　　　　　　　　　　　　)
UNIVERSITY HEALTH SERVICES, INC. )
and PIEDMONT HEALTHCARE, INC.,　　)
　　　　　　　　　　　　　　　　　)
　　　　　DEFENDANTS　　　　　　)

## PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REMAND

### I.　　Plaintiffs' claims are not ERISA claims but claims for wages.

In opposing Plaintiffs' Motion to Remand, the first case cited by Defendants is Garcon v. United Mutual of Omaha Ins. Co., 779 F.Appx. 595 at 597 (11th Cir. 2019), to explain that this is the difference between complete or super-preemption and taking the position that this case involves super-preemption. Garcon was a *pro se* complaint filed by an automobile mechanic and service technician who enrolled in both short-term and long-term disability through his workplace. Garcon claimed that the insurance company denied benefits after an accident and instead referred him to Social Security. In denying Garcon's motion to remand, District Court Judge Totenberg, cited Aetna Health, Inc. v. Davila, 542 U.S. 200, 210 (2004), and found that there was a plan, that Garcon had statutory standing under ERISA, that he had a colorful claim for benefits, and denied the motion to remand. Garcon v. United Mutual of Omaha Ins. Co., 2018 Westlaw 10690745 (N.D. Ga. 2018). The *pro se* plaintiff's claims filed in the Superior Court of Fulton County, Georgia were for "gainful tort and abuse with massive collateral impact over the financial, physical and mental condition of the plaintiff." In that case, the district court granted judgment on the

pleadings because the plaintiff had failed to exhaust his administrative remedies as provided for in the Plan. The district court then reviewed the policy which provided that Garcon was excluded from disability because it arose out of employment and he would be entitled to compensation under Workers' Compensation laws, an exclusion under the policy. The district court then granted judgment on the pleadings at <u>Garcon v. United Mutual of Omaha Ins. Co.</u>, 2018 Westlaw 10690757 (N.D. Ga. 2018).

The facts in <u>Garcon</u>, *supra*, are completely opposite to the facts in the case at hand. There, the disability benefits were part of an ERISA plan and there was no dispute as to that fact. Also, there was no dispute that the plaintiff failed to exhaust his administrative remedies. In addition, there was an exclusion under the disability policy for short-term benefits because it was covered by Workers' Compensation.

Therefore, the Defendants citing <u>Garcon</u> on page 4 of their brief is not related to the issues in this case. Defendants have failed to identify any specific written plan. Furthermore, Defendants did not attach any written plan or the procedures to follow to the Affidavit of Mr. Belkoski. The only explanation has to be that this agreement was part of the wages that it agreed to pay to certain employees who worked for 30 years without a break in service.

The Defendants then cite <u>Whitt v. Sherman International Corp.</u>, 147 F.3rd 1325, 1329 (11th Cir. 1998) in support of their argument that complete preemption or super-preemption applies. However, a reading of that case shows that Whitt had an executive plan and was denied benefits. In the district court below, the district court denied the motion to remand and entered summary judgment for the former employer. The 11th Circuit held that the retroactive effect of the Executive Incentive Plan adopted subsequent to the employee's termination was not the proper basis for an ERISA preemption or removal. There, <u>the court held that there was no ERISA plan at the time of</u>

2

the removal and held that retroactive application of a subsequently adopted ERISA plan would be inappropriate.  The court also cited with approval the 11th Circuit's decision in Burns v. Windsor Insurance Co., 31 F.3d 1092 at 1095 (11th Cir. 1994), a diversity case where the 11th Circuit held that where there is doubt about removal, the court should grant the motion to remand!   Whit, *supra*, does not support the claims being made by Defendants for removal.  Nowhere in the Defendants' argument do they refer to the payroll practices with the exception to ERISA.  In the case at hand, all of the Plaintiffs have alleged under oath that the contract to provide free Medicare supplement insurance to them if they met certain criteria as part of a retention plan that they would be given this free benefit.  That has been referred to by the Plaintiffs as a "hidden paycheck", a term that University Hospital Services, Inc. ("UHS") has utilized.    If this was not part of the payroll practices of UHS, why was that term used?

In Stern v. International Business Machine Corp., 326 F.3d 1367 (11th Cir. 2003), the action was removed to the Southern District of Florida based upon ERISA.  The motion to remand was denied and summary judgment was granted to the employer.  On appeal, the 11th Circuit held that the employer program providing employees with regular salary when the employee was unable to work due to sickness or accident was exempt from ERISA and was covered by the payroll exception, 29 C.F.R. § 2510.3-1(b). *See also,* Massachusetts v. Morash, 490 U.S. 107 (1989).

In the case at hand, Defendants have produced no evidence with its filing to show that this was part of an ERISA plan and have produced no evidence of its filing with the federal government showing that the written agreement to provide free Medicare supplement policies was part of an ERISA plan.  Even if UHS had labeled this plan in a filing with the federal government as part of an ERISA medical plan, that label would not necessarily make it an ERISA plan.  Fort Halifax Packing Co. v. Coyne, 482 U.S. 1 (1987).

3

In its Petition for Removal, UHS has produced absolutely no evidence that this plan payroll benefit described under oath by the Plaintiffs as a hidden paycheck was in any way connected with any health benefit plan that had been provided.  This payroll practice only applies to individuals once they have retired and have obtained Social Security Medicare benefits.  In this case, this benefit comes from UHS assets and there is no evidence here that the purpose of ERISA was being avoided, that is, to protect employees from mismanagement of a separate ERISA fund.  There are scores of cases in which the District Court and the 11th Circuit have remanded cases where a payroll practice such as that involved in the case at hand was subject to the mandatory jurisdiction of ERISA.

In Franklin v. Blue Cross and Blue Shield of Florida, Inc., 2006 Westlaw 2792893 (M.D. Fla. 2006), Franklin filed an action in state court alleging that under the policy she was entitled to certain benefits.  Because the plan alleged that the claim was being brought under ERISA, the defendant removed the case to federal court.  The District Court remanded and held that it did not have jurisdiction because the benefit that was provided to the employee was a payroll practice.  In the case at hand, Plaintiffs are seeking a benefit post-employment for payment for their continued service.  These individuals have worked pursuant to their agreement to obtain a "hidden paycheck" at the end of their employment.  The gist of ERISA protection is to protect employees in their employment relationships.

In Letner v. UNUM Life Ins. Co. of America, 2001 Westlaw 1867976 (N.D. Fla. 2001), the case was remanded because the disability policy was not part of an ERISA plan.  Likewise, in Edwards v. Prudential Ins. Co. of America, 213 F.Supp.2d 1376 (S.D. Fla. 2002), the participants had a short-term disability plan provided by the Teacher's Association brought a state court action against the insurer alleging breach of contract.  The action was removed and the Court held that

the short-term disability policy was exempt from ERISA. *See also,* <u>Bilheimer v. Federal Express</u>
<u>Corp.</u>, 2009 Westlaw 1324202 (S.D. Fla. 2009); <u>Farr v. Bellsouth Telecommunications</u>, 2005
Westlaw 8158594 (N.D. Ala. 2005).

In the case at hand, the agreement to provide free Medicare supplemental policies was
nothing but a payroll practice as the Plaintiffs have alleged under oath, a "hidden paycheck", and
the purposes of ERISA are nowhere found in allowing this case to proceed in state court.
Therefore, the arguments made by the Defendants as to this being required to be removed based
upon ERISA jurisdiction are without merit.

**II.      The RCHA at all times has maintained control over UHS under the terms and**
**provisions of its lease and there is no questions but that the RCHA is a governmental**
**organization exempt by the provisions of 29 U.S.C. § 1003(d)(1).**

The term "governmental plan" means a plan established or maintained for its employees
by the government of the United States, the government of any state or political subdivision or by
"<u>any agency or instrumentality of any of the foregoing</u>".  UHS would be an instrumentality of a
governmental agency.

In <u>Richmond County Hospital Authority v. Richmond County</u>, 255 Ga. 183, 336 S.E.2d
562 (1985), the Richmond County Commission challenged the authority of the RCHA to enter
into a lease with a non-profit organization, UHS, to operate UH.  The Supreme Court of Georgia
reversed the decision of the Superior Court of Richmond County, Georgia ordering that the lease
be declared void and held at the beginning of the opinion:

> "The Richmond County Hospital Authority (the "Authority") is a <u>governmental</u>
> <u>entity</u> that was created in 1960 by resolution of the Board of Commissioner of
> Richmond County, Georgia pursuant to the Hospital Authorities Act, O.C.G.A. §

31-7-70, et seq., to operate the University Hospital as a public facility in Richmond County."  [Emphasis added].

The Supreme Court upheld the lease citing O.C.G.A. § 31-7-77 with the proviso that the Authority shall have retained sufficient control over the project so released as to insure that the Lessee will not in any event obtain more than a reasonable rate of return on an investment in the project.

The Superior Court had found that one of the major reasons for the lease was to evade and avoid the provisions of the Open Records Act and the Open Meetings Act ("Sunshine Act").  The Supreme Court pointed out that the Authority imposed the two referred to statutes, the Open Records Act and the Sunshine Act, in the lease, all as shown by the amendment to the lease made June 17, 1985.  (R16-2, pp.43-45).  The lease was also amended to provide that in connection with the appointment of trustees that the RCHA should have the power to appoint the trustees of UHS provided, however, that each person so appointed shall be one of three persons nominated for such position by UHS.  UHS returned to the RCHA on at least four (4) occasions to obtain revenue participation certificates and, in each amendment to the lease, refers to "the Richmond County Hospital Authority, a public body corporate and politic and an instrumentality of the State of Georgia".  (R50; R16-2, pp.78, 106, 144).  To argue that UHS is not an agency or instrumentality of the RCHA is to ignore the leases and the decision of the Supreme Court of Georgia in <u>Richmond County Hospital Authority v. Richmond County</u>, *supra.*

RCHA has in effect maintained control over UHS in that there would not be sufficient funds raised by revenue anticipation certificates issued as a governmental entity which can only be issued to a hospital authority, not by a lessee. *See*, O.C.G.A. § 31-7-72(e)(1).

In support of its argument that the governmental exemption does not apply, UHS cites Germaine v. UNUM Life Ins. Co. of America, 2004 Westlaw 2624873 (N.D. Ga. 2004). That case involves the Anthem Regional Health Services, but missing from that case are any of the leases or the terms thereof or a decision like that involved here. There, the plaintiff sought disability benefits that were denied by UNUM. The Northern District rejected the governmental exception to ERISA and pointed out that although the facts were unclear that the long term disability program did not fall under a governmental exemption to ERISA. The Defendants here also rely upon Darden v. DeKalb Medical Center, 2008 Westlaw 11319981 (N.D. Ga. 2008). There, the insured was murdered by Mueller. Darden contended that the employer, DeKalb Medical Center, failed to submit the documents to show that there was a request for additional benefits prior to Smith's death. In that case, even though the District Court did acknowledge, there was some disagreement during the circuits citing a Southern District of Georgia decision in Williams-Mason v. Reliance Standard Insurance Company, 2006 Westlaw 1687760 (S.D. Ga. 2006).

### III.   The Defendants have failed to carry their burden of proof of jurisdiction.

In connection with the removal of an action from the Superior Court, a removing defendant bears the burden of proof of establishing subject matter jurisdiction. The affidavit of Robert Taylor, which is attacked on pages 13-17 of Defendants' brief, fails to present any facts showing that the agreement to provide free Medicare supplement insurance policies after certain preconditions were met, those being, the employee was employed prior to January 1, 2005; the employee had 30 years of uninterrupted service; and the employee then qualified for Medicare was anything other than a payroll practice. This was as alleged by all Plaintiffs and described by UHS to them as a "hidden paycheck". Mr. Robert Taylor was the Chief Financial Officer of UHS and was the Comptroller at the time the RCHA leased assets to UHS. Mr. Belkoski was not even

employed by UHS at the time of the litigation in 1984-1985. A review of the entire lease and the two initial amendments to the lease show that it was intended not to remove the RCHA from control over the operation of UH and the purpose was to expand the operation of UH beyond Richmond County and to provide other types of services that were needed in order for a hospital to economically survive. UHS has those documents in its possession and has elected to only produce documents attached to Mr. Belkoski's affidavit, who was not employed until 1993, and only served as Chief Financial Officer since July 1, 2007. UHS had in its possession or should have in its possession the documents and reasons for initiating the employee retention plan that is the subject matter of this lawsuit but has elected not to have those attached to Mr. Belkoski's affidavit. The law is well-settled that removal statutes should be strictly construed and that uncertainty involving removals are always decided in favor of remanding the case to the state court. University of South Alabama v. American Tobacco Co., 168 F.3d 405 at 411 (11th Cir. 1999). If this particular plan to provide free supplemental insurance benefits to certain retirees was in effect, where is the written plan? Where is the procedure? Why haven't the Defendants attached those documents to any affidavit of the custodian of those documents? Mr. Taylor does not offer unsubstantiated legal conclusions but sets forth facts that are known by him as the former Chief Financial Officer of UHS.

On pages 15-16 of its brief, UHS refers to the power that is now granted to Piedmont concerning the operation of UH. Nothing that Piedmont has done subsequent to the creation of the "hidden paycheck" to pay wages can defeat that contractual claim. To argue on page 16 that the RCHA does not have absolute control is to disregard the fact that all of the real estate is still titled in the name of the RCHA and that RCHA has used its ability to have tax-free revenue

anticipation certificates issued which were secured by the lease payments from UHS.   Over $300,000,000 has been raised through RCHA's issuance of revenue anticipation certificates.

**IV.     Plaintiffs' state court action is not preempted by ERISA.**

There exists an independent legal duty to pay wages and Plaintiffs seek a declaratory judgment that this obligation continues in the future.   Surely, this obligation was known at the time of the merger.   Where are the documents showing this was discussed at that time?

**V.     Plaintiffs' claim for a declaratory judgment as to unpaid wages is a proper remedy.**

In this case, UHS and Piedmont have refused to pay the Plaintiffs the benefits that they were promised.   Claims for unpaid wages must be brought within two (2) years under O.C.G.A. § 9-3-22.   All of the named Plaintiffs are retirees on Medicare who have fixed incomes and must make careful plans regarding their future financial decisions.   At the time Piedmont entered into its agreement with UHS, it had or should have had knowledge of the fact that these agreements for a "hidden paycheck" had been made.

As previously stated, the benefits due are not ERISA benefits, but are benefits that are due under a contract of employment.

For the reasons stated herein, this case should be remanded.

This 31st day of May, 2023.

/s/**John B. Long**
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

/s/**Thomas W. Tucker**
THOMAS W. TUCKER, ESQ.
Georgia State Bar No. 717975

Attorneys for Plaintiffs

OF COUNSEL:

TUCKER LONG, P.C.
P. O. BOX 2426
453 GREENE STREET
AUGUSTA, GA  30903
(706) 722-0771
(706) 722-7028 Fax
jlong@tuckerlong.com
ttucker@tuckerlong.com

## CERTIFICATE OF SERVICE

This is to certify that on this date, the foregoing ***Supplemental Brief in Support of Motion to Remand*** was filed with the Clerk of Court in accordance with ECF rules using the CM/ECF system and was served electronically upon counsel for the other parties and by placing a copy of same in the United States Mail with adequate postage thereon, properly addressed to:

Edward H. Wasmuth, Jr., Esq.
Emily E. Friedman, Esq.
Smith Gambrell & Russell, LLP
1105 W. Peachtree Street, NE
Suite 1000
Atlanta, GA 30309
ewasmuth@sgrlaw.com
efriedman@sgrlaw.com

This 31st day of May, 2023.

/s/ **John B. Long**
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

/s/ **Thomas W. Tucker**
THOMAS W. TUCKER, ESQ.
Georgia State Bar No. 717975

Attorneys for Plaintiffs