IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

ROBERT M. TAYLOR, III,  et al.     )
                                  )
      PLAINTIFFS,      )
                                  )
VS.                          )     CASE NO. 1:23-cv-00047-JRH-BKE
                                  )
UNIVERSITY HEALTH SERVICES, INC. )
and PIEDMONT HEALTHCARE, INC.,   )
                                  )
                                  )
      DEFENDANTS    )

## AFFIDAVIT OF ROBERT M. TAYLOR, III

Personally appeared before the undersigned attesting authority, duly authorized to administer oaths, ROBERT M. TAYLOR, III, who after first being duly sworn and based upon his personal knowledge, states:

1.     That during the period of time from 1984 to 1985, Affiant was comptroller at University Hospital ("UH") and later became the Chief Financial Officer.  During the period of time that the initial lease agreement between the Richmond County Hospital Authority ("RCHA") and University Health Services, Inc. ("UHS") was initially negotiated and agreed upon, that being the lease dated December 14, 1984.  (Dkt. 16-2, pp.1-36).  Affiant was part of the management team.  At that time, RCHA operated UH and, based upon certain restraints in relation to expanding the service area and the services, that lease agreement was negotiated and entered into between RCHA and UHS.  At no time was the lease agreement designed to remove assets from the authority

of RCHA, which was part of and remained part of the governing authority of Richmond County, Georgia, all as set forth in the Hospital Authorities Act, O.C.G.A. § 31-7-70, et seq.

2.    That, at the time this lease agreement was entered into, UH's CEO was Edward M. Gillespie.    There were discussions relating to the survivorship of UH and its need to be able to expand beyond the limits of Richmond County and to increase its services.   Negotiations which led to the original lease agreement were not designed to remove the assets from the control of RCHA, which was and still is part of the governing authority of Richmond County, Georgia, all as set forth in O.C.G.A. § 31-7-71(2) and in supplemental lease agreements relating to Revenue Anticipation Certificates.  (Dkt. 16-2, pp. 50, 78, 106, 144).

3.    That Affiant has been a life-long resident of the Augusta area and is mindful of the fact that at the time of said lease all of the property acquired for the current location of UH was initially acquired pursuant to an urban renewal project with the right of condemnation being given to the government.

4.    That to Affiant's knowledge, at the time of the lease, any subsequent amendment thereto was not an intent to remove the property from the ownership of the RCHA.   The real property still remained  titled in the name of the RCHA.

5.    That the members of RCHA are appointed by the local governing authority of Richmond County, Georgia; and the initial members of UHS were appointed by the RCHA and the RCHA had the right to reject proposed board members to UHS and as a result have *de facto* control over the lessee in that additional names had to be submitted to the RCHA and they could have turned those names down.

6.    That when litigation occurred between Richmond County, Georgia and the RCHA relating to the legality of the original lease in 1984, Richmond County, Georgia contended that the

lease removed the hospital from governmental and was thus illegal.  An amendment to the lease agreement dated March 28, 1985 was entered into, which specifically provided that the RCHA would have the power to appoint the trustees of UHS and that each person so appointed shall be one of three (3) persons nominated for such position by UHS.  (*See*, amendment to lease dated March 28, 1985; Dkt. 16-2-, pp.37-42).  An additional amendment to the lease was entered into to ensure that UHS would be subject to the Sunshine Act and to the Open Records Act by amendment dated June 17, 1985.  (Dkt.16-2, pp.43-45).  In the original lease, it was understood and expressly set forth that, in connection with the use of funds to expand and build improvements for UH, that the RCHA would not unnecessarily withhold consent to the issuance of revenue anticipation certificates which has been used extensively by UHS.  These revenue anticipation certificates were nontaxable investments that were only available to governmental entities.

7.     That in all subsequent amendments to the lease, the RCHA has continued to be a part of same.  (Dkt. 16-2, pp.129-189; 9th Supplemental Lease Agreement dated 10/1/2016 relating to $135,745,000 in revenue anticipation certificates listing RCHA as a public body corporate and politic and instrumentality of the State of Georgia.  (Dkt. 16-2, p. 143).

8.     That when Trinity Hospital (old St. Joseph's Hospital) was acquired it was acquired in the name of the RCHA, a local governmental authority, and then leased to UHS.  (Dock. 16-2, pp.168-189).

9.     That Affiant disagrees with the statement by David Belkoski that the lease between UHS and Piedmont Health could grant control over property owned by the RCHA and disagrees with the attached documents amending the By-Laws of UHS.  Affiant knows of no authority that Mr. Davis had to release assets that have to be returned to the RCHA at the end of the lease. Affiant disagrees with the correctness of the documents filed with the Secretary of State relating

to amending and restating the articles of UHS that provides on page 4, paragraph VI of the amended and restated articles that:

> In the event of the dissolution of the Corporation, the Board of Directors, after paying or making provision for the payment of all of the liabilities and obligations of the Corporation, shall distribute all of the assets of the Corporation to Piedmont Healthcare, Inc. (provides that Piedmont Healthcare, Inc., is at such time organized and operated exclusively for purposes as shall cause it to qualify as an exempt organization under Section 501(c)(3) of the Internal Revenue Code) to be used exclusively for public purposes.

(*See*, Ex. A, attached hereto; Documents filed with the Georgia Secretary of State). These properties have and always would revert to the RCHA and Affiant knows of no basis for UHS having that authority.

10. That, in connection with the premise and agreement of UHS to provide free of charge Medicare supplement policies to employees who met certain qualifications, that is, (1) were employed prior to January 1, 2005; (2) had 30 continuous years of service; and (3) upon reaching the age of 65 years, would be entitled to Medicare supplemental policies free of charge, he is familiar with that policy. That benefit was not considered at the time by UHS to be part of any ERISA health care plan and Affiant knows of no documents that would state that this benefit was related to any ERISA benefit being provided to employees. It was his understanding that this benefit was part of a hidden paycheck benefit that would be provided to certain employees if they met the qualifications and it was designed to encourage employee retention since every time good employees left the employment of UHS and went to work for another it cost money. UHS referred to this as a "hidden paycheck". There was never any connection with this employee retention plan

to any retirement plan or health benefit plan being provided and this was not related to the health benefit plan being provided employees of University Health during the period of time that he was employed by University Health Services.

11.     That Affiant makes this affidavit in support of the Motion to Remand and in opposition to the Motion to Dismiss the claims of the Plaintiffs in the above-captioned case.

This _31st_ day of _May_____, 2023.

Sworn to and subscribed before me,                    )
this _31st_ day of _May_____, 2023.                   )
                                                      )
_____                      )
Notary Public, _____ County,                  )
State of Georgia                                      )

My Commission Expires:                                )
_My Commission Expires Jan. 2, 2024_                  )

_____
ROBERT M. TAYLOR, III

5

Control Number : J407970

# STATE OF GEORGIA
## Secretary of State
### Corporations Division
**313 West Tower**
**2 Martin Luther King, Jr. Dr.**
**Atlanta, Georgia 30334-1530**

### CERTIFICATE OF RESTATED ARTICLES

I, **Brad Raffensperger,** the Secretary of State and the Corporation Commissioner of the State of Georgia, hereby certify under the seal of my office that

**University Health Services, Inc.**

**a Domestic Nonprofit Corporation**

has amended and filed duly restated articles on 03/01/2022 in the Office of the Secretary of State and has paid the required fees as provided by Title 14 of the Official Code of Georgia Annotated. Attached hereto is a true and correct copy of said restated articles.

WITNESS my hand and official seal in the City of Atlanta and the State of Georgia on **03/01/2022**.



Brad Raffensperger
Secretary of State





**EXHIBIT**

A

## CERTIFICATE OF AMENDED AND RESTATED
## ARTICLES OF INCORPORATION
## OF UNIVERSITY HEALTH SERVICES, INC.

### February 28, 2022

Pursuant to Section 14-3-1006 of the Georgia Nonprofit Corporation Code, UNIVERSITY HEALTH SERVICES, INC., a Georgia nonprofit corporation, hereby certifies that:

### I.

The name of the corporation is: University Health Services, Inc.

### II.

The original Articles of Incorporation of the Corporation were filed with the office of the Secretary of State of Georgia on May 31, 1984.

### III.

Pursuant to Section 14-3-820 of the Georgia Nonprofit Corporation Code, the Board of Directors of the Corporation duly adopted resolutions on September 9, 2021, setting forth and declaring advisable that the Corporation amend and restate its Articles of Incorporation by deleting the provisions thereof in their entirety and substituting in lieu thereof new provisions so that, as amended and restated, the provisions shall read in their entirety as hereinafter set forth.

### IV.

The Amended and Restated Articles of Incorporation do not contain any amendment requiring the approval by the members or any other person other than the Board of Directors of the Corporation.

4813-8407-7562x5

V.

The Amended and Restated Articles of Incorporation supersede the Articles of Incorporation and all amendments thereto and are effective as of 12:00:01 AM on March 1, 2022.

VI.

The Amended and Restated Articles of Incorporation are attached hereto.

*[Signature Page Follows]*

2

4813-8407-7862v5

IN WITNESS WHEREOF, the Corporation has caused this Certificate of Amended and Restated Articles of Incorporation to be executed by its duly authorized officer as of the date first above written.

UNIVERSITY HEALTH SERVICES, INC.

By: _____
Name:    James R. Davis
Title:    CEO

4813-8407-7562v3

## AMENDED AND RESTATED ARTICLES OF INCORPORATION

### OF

### UNIVERSITY HEALTH SERVICES, INC.

The Articles of Incorporation of UNIVERSITY HEALTH SERVICES, INC. are as follows:

### I.

The name of the Corporation shall be University Health Services, Inc.

### II.

The Corporation is organized pursuant to the provisions of the Georgia Nonprofit Corporation Code. The Corporation shall have no capital stock and shall have one (1) member, who shall have such rights as are set forth in these Articles of Incorporation and the Bylaws. The sole member of the Corporation shall be Piedmont Healthcare, Inc., a Georgia nonprofit corporation.

### III.

The Corporation shall have perpetual duration.

### IV.

The Corporation shall be organized and at all times thereafter operated exclusively for public charitable, educational and scientific uses and purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. The purpose of the Corporation is to serve and promote

the public health of the general population and particularly to lease, from The Richmond County Hospital Authority, and operate Piedmont Augusta, Piedmont Augusta – Summerville Campus, and related facilities as an acute-care general hospital for the benefit of the general public.  In furtherance of such purposes, the Corporation shall have full power and authority:

      1.    To provide hospital or medical care and to carry out, directly or indirectly, related health care functions and other related services supportive of health care functions;

      2.    To own and operate, directly or indirectly, hospitals, healthcare facilities, wellness centers, and other related facilities promoting the health and well-being of the general public;

      3.    To promote the delivery of health care to the general public by providing services and resources to hospitals and other health care organizations; and

      4.    To carry on planning, fund raising and other activities related to the promotion of the health of persons within the Corporation's service area, including the making of contributions to other exempt organizations for such purposes; and to perform all other acts necessary or incidental to the above and to do whatever is deemed necessary, useful, advisable, or conducive, directly or indirectly, as set forth in these Articles of Incorporation and the Bylaws, including the exercise of all other power and authority enjoyed by corporations generally by virtue of the provisions of the Georgia Nonprofit Corporation Code (within and subject to the limitations of Section 501(c)(3) of the Internal Revenue Code).

The Corporation shall serve only such purposes and functions and shall engage only in such activities as are consistent with the purposes set forth in this Article IV and as are exclusively charitable, educational and scientific and are entitled to charitable status under Section 501(c)(3) of the Internal Revenue Code.

2

4813-8407-7562v5

## V.

The Corporation shall be neither organized nor operated for pecuniary gain or profit.

      (i)    No part of the property of the Corporation and no part of its net earnings shall inure to the benefit of or be distributable to any member, director, officer or trustee of the Corporation or any other private person except that the Corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distribution in furtherance of the purposes as set forth in Article IV hereof. The Corporation shall engage only in activities in furtherance of the purposes for which the Corporation is organized as stated above.

      (ii)    The Corporation shall not carry on propaganda or otherwise attempt to influence legislation to an extent that would disqualify it for tax exemption under Section 501(c)(3) of the Internal Revenue Code by reason of attempting to influence legislation. The Corporation shall not participate in or intervene in (including the publication or distribution of statements) any political campaign on behalf of any candidate for public office.

      (iii)    Notwithstanding any other provisions of these Articles of Incorporation, the Corporation shall not carry on any other activities not permitted to be carried on:

          (1)    By a corporation exempt from federal income taxation under Section 501(c)(3) of the Internal Revenue Code and which is other than a private foundation within the meaning of Section 509(a) of the Internal Revenue Code; or

          (2)    By a corporation, contributions to which are deductible for federal income tax purposes under Section 170(c)(2) of the Internal Revenue Code. It is intended that the Corporation shall have and continue to have, the status of an organization which is exempt from federal income taxation under Section

3

501(c)(3) of the Internal Revenue Code and which is other than a private foundation within the meaning of Section 509(a) of the Internal Revenue Code. All terms and provisions of these Articles of Incorporation and the Bylaws of the Corporation and all authority and operations of the Corporation shall be construed, applied and carried out in accordance with such intent.

## VI.

In the event of the dissolution of the Corporation, the Board of Directors, after paying or making provision for the payment of all of the liabilities and obligations of the Corporation, shall distribute all of the assets of the Corporation to Piedmont Healthcare, Inc. (provided that Piedmont Healthcare, Inc. is at such time organized and operated exclusively for purposes as shall cause it to qualify as an exempt organization under Section 501(c)(3) of the Internal Revenue Code) to be used exclusively for public purposes. In the event that Piedmont Healthcare, Inc. is not then in existence, is not exempt under Section 501(c)(3) of the Internal Revenue Code or is for any other reason unable to accept title to such assets, then the Board of Directors shall distribute all of the assets of the Corporation to one of more organizations which themselves are exempt as organizations described in Sections 501(c)(3) and 170(c)(2) of the Internal Revenue Code or corresponding sections of any prior or future Internal Revenue Law, or to the Federal, State or local government for exclusive public purpose. In the event that for any reason upon the dissolution of the Corporation the Board of Directors of the Corporation shall fail to act in the manner herein provided within a reasonable time, the Superior Court of the County in which the principal office of the Corporation is then located shall make such distribution as herein provided upon the application of one or more persons having a real interest in the corporation or its assets. Notwithstanding any other provisions of these Articles, the

4

4813-8407-7562v5

Corporation shall not carry on any other activities not permitted to be carried on by (a) a corporation exempt from federal income tax under Section 501(c)(3) of the Internal Revenue Code, as amended, or a corresponding provision of any future United States Internal Revenue Law, or (b) a corporation, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code or any other corresponding provision of any future United States Internal Revenue Law.

## VII.

The affairs of the Corporation shall be managed by a Board of Directors. The number of Directors of the Corporation and method of election shall be set out in the Bylaws.

## VIII.

The mailing address of the principal office of the Corporation shall be 1350 Walton Way, Augusta, Georgia 30901-2612.

## IX.

The registered office of the Corporation shall be at 192 Anderson Street, NE, Suite 125, Marietta, Cobb County, Georgia 30060. The initial registered agent of the Corporation at such address shall be CSC of Cobb County, Inc.

## X.

No director shall have any personal liability to the Corporation or to its members for monetary damages for breach of duty of care or other duty as a director, by reason of any act or omission occurring subsequent to the date when this provision becomes effective, except that this provision shall not eliminate or limit the liability of a director for (a) any appropriation, in violation of his duties, of any business opportunity of the Corporation; (b) acts or omissions

5

which involve intentional misconduct or a knowing violation of law; (c) liabilities of a director imposed by Section 14-3-860 through 14-3-864 of the Georgia Business Corporation Code; or (d) any transaction from which the director derived an improper personal benefit.

## XI.

These Articles of Incorporation may be amended at any time and from time to time by the affirmative vote of a majority of all of the directors then in office, provided that no amendment shall become effective without the prior approval of a majority of all of the members of the Board of Piedmont Healthcare, Inc., a Georgia nonprofit corporation.

## XII.

These Articles of Incorporation were approved by the Board of Directors of the Corporation on September 9, 2021, to be effective as of 12:00:01 AM on March 1, 2022.

4813-8407-7562v5

IN WITNESS WHEREOF, University Health Services, Inc. has caused these Amended and Restated Articles of Incorporation to be executed by its duly authorized officer.

UNIVERSITY HEALTH SERVICES, INC.

By: _James R. Davis_

Name: James R. Davis

Title: CEO

4813-8407-7562v5

## CERTIFICATE OF SERVICE

This is to certify that on this date, the foregoing *Affidavit of Robert M. Taylor, III* was filed with the Clerk of Court in accordance with ECF rules using the CM/ECF system and was served electronically upon counsel for the other parties and by placing a copy of same in the United States Mail with adequate postage thereon, properly addressed to:

Edward H. Wasmuth, Jr., Esq.
Emily E. Friedman, Esq.
Smith Gambrell & Russell, LLP
1105 W. Peachtree Street, NE
Suite 1000
Atlanta, GA  30309
ewasmuth@sgrlaw.com
efriedman@sgrlaw.com

This 31st day of May, 2023.

/s/ **John B. Long**
JOHN B. LONG, ESQ.
Georgia State Bar No. 457200

/s/ **Thomas W. Tucker**
THOMAS W. TUCKER, ESQ.
Georgia State Bar No. 717975

Attorneys for Plaintiffs