IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| ROBERT M. TAYLOR, III et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:23-cv-00047-JRH-BKE |
| UNIVERSITY HEALTH SERVICES, INC. and PIEDMONT HEALTHCARE, INC., | ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL BRIEF IN FURTHER OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

Plaintiffs' reply brief in further support of their Motion to Remand ("Remand Motion") (Doc. 20) presents new legal arguments that were not previously asserted in their moving papers. Specifically, plaintiffs now argue that (1) a different ERISA exception – known as the "payroll practice" exception – applies, and (2) the Medicare supplement benefit program is not an ERISA plan because it was never "labeled" as such in the Form 5500s UHS filed with the U.S. Department of Labor (the "DOL") for its medical benefit programs. Plaintiffs also continue to apply the wrong legal standard to support their argument that the Medicare supplement benefit program is not an ERISA plan. As set forth below, none of Plaintiffs' arguments are legally sufficient to support remand.[1]

**I.  The Medicare Supplement Benefit Plan is Not a Payroll Practice.**

Plaintiffs argue, for the first time in their supplemental brief, that the Medicare supplement benefit plan is a "plan payroll benefit" and therefore, subject to ERISA's payroll practice

---

[1] Defendants have only sought to address in this brief the new arguments raised by Plaintiffs' reply. The remaining section of Plaintiffs' reply addressing ERISA's governmental plan exemption repeats the same legal arguments already raised in Plaintiffs' Remand Motion and fully briefed in Defendants' opposition. Therefore, Defendants will not address them herein.

exception. Doc. 20, pp. 3-5. The plain language of ERISA's payroll practice regulation demonstrates the exception does not apply here.

ERISA's regulations exclude certain payroll practices from being considered "employee welfare benefit plans." Specifically, the exception provides as follows:

> **Payroll practices.** [T]he terms "employee welfare benefit plan" and "welfare plan" shall not include—
>
> (1) Payment by an employer of compensation on account of work performed by an employee, including compensation at a rate in excess of the normal rate of compensation on account of performance of duties under other than ordinary circumstances, such as—
> *(i) Overtime pay,*
> *(ii) Shift premiums,*
> *(iii) Holiday premiums,*
> *(iv) Weekend premiums;* [and]
>
> (2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time *during which the employee is physically or mentally unable to perform his or her duties*, or is *otherwise absent for medical reasons* (such as pregnancy, a physical examination or psychiatric treatment)[.]

29 C.F.R. § 2510.3-1(b)(1) & (2) (emphasis added).[2]

Plaintiffs do not specify the specific payroll practice exception they are relying upon. However, it is clear the benefits Plaintiffs seek in this case – lifetime retiree Medicare supplement benefits – are <u>not</u> listed in any of the enumerated categories. The benefits are not compensation on account of work performed, such as overtime pay, holiday premiums or shift premiums, and they also are not payments in the form of salary continuation on account of an employee's inability to

---

[2] Other types of compensation to an employee are also enumerated under the payroll practice exception, including compensation paid to an employee for: (i) periods of time the employee performs no duties because the employee is on vacation or absent on a holiday; (ii) absences due to active military duty, jury duty or testifying in official proceedings; (iii) periods of time an employee is engaged in training; and (iv) periods of time an employee is on sabbatical leave or pursuing further education. 29 C.F.R. § 2510.3-1(b)(3). Plaintiffs do not appear to argue any of these exceptions apply here.

work for medical reasons. Thus, the Medicare supplement benefits are not wages subject to the payroll practice exception.

Nor are the Medicare supplement benefits paid directly to any of the Plaintiffs through payroll, which, as the exception's name suggests, is a prerequisite. In fact, no "payroll practice" is involved at all given that Plaintiffs are <u>retirees</u> and no longer employed. *See, e.g., Musmeci v. Schwegmann Giant Super Markets, Inc.,* 332 F.3d 339, 348 (5th Cir. 2003) (holding grocery voucher benefit program provided to retirees was an ERISA plan rather than wages subject to the payroll practice exception because it provided a benefit to *retired* employees). Rather than being paid directly to any of the Plaintiffs through payroll, the Medicare supplement benefits here are paid in the form of premiums remitted by UHS directly to the insurance carriers providing the medical coverage. *See* Doc. 16, pp. 8 – 9 (explaining how the benefits are paid); *see also* Doc. 1-1 (Compl.), Ex. A at pp. 9 – 17 of 49 (showing annual premiums were paid by UHS directly to medical insurance carriers). Plaintiffs do not, and cannot, dispute these facts.

Although there are not many reported cases addressing the payroll practice exception in the context of retiree benefits (likely because, based on the plain language of the regulation, there can be no serious dispute over whether the payroll practice exception applies to retiree medical benefits), courts that have addressed the issue all hold the exception does not apply to <u>retiree</u> benefits. *See, e.g., Musmeci*, 323 F.3d at 348 (rejecting argument that grocery voucher program providing benefits to retirees was excepted under ERISA as a payroll practice); *Sullivan v. Cuna Mut. Ins. Soc.*, 683 F. Supp. 2d 918, 933 - 34 (W.D. Wis. 2010), *aff'd,* 649 F.3d 553 (7th Cir. 2011) (sick leave account policy used to pay for retiree health insurance premiums was not an exempt payroll practice because it did not provide a one-time cash payout on retirement and was contingent

on medical plan remaining in effect).[3]

Plaintiffs attempt to avoid the plain language of the regulation and existing case law by arguing that the subsidized Medicare supplement benefits are "wages" provided to Plaintiffs in the form of a "hidden paycheck" and are therefore somehow subject to this exception. Doc. 20, pp. 3 – 4. These contentions are unsupported by fact or law. There is not any reference to this so-called "hidden paycheck" in the record, including among the documents relied upon by Plaintiffs. See Doc. 1-1 (Compl.), Ex. A. Even setting aside the lack of evidence of the use of this terminology, these benefits are simply not "wages" as that term is defined under the Internal Revenue Code. Instead, they are subject to the income exclusion for employer-provided health plan coverage. *See* Internal Revenue Section 106(a). If these benefits were considered wages, Plaintiffs would be required to pay income taxes on the amounts paid on their behalf. Plaintiffs' characterization of the benefits as a "hidden paycheck" does not bring these benefits within the well-established purview of the payroll practice exception.

Plaintiffs also argue that the Medicare supplement benefits are subject to the payroll practice exemption because "this benefit comes from UHS assets." Doc. 20, p. 4. But the argument mischaracterizes the requirements set forth in payroll practice regulation; use of employer assets is only one condition. Moreover, it wrongly suggests that *any* benefit program funded by employer (or former employer) assets falls under the exception, which obviously is not the case. Indeed, the majority of ERISA-governed welfare benefits, including the Medicare supplemental benefits at issue here, are paid for using employer (or former employer) assets. *See* Doc. 16, pp. 7 - 8 (citing cases holding that benefit programs providing free medical and other

---

[3] Even if Plaintiffs were still employed, the payroll practice exception still would not apply. As set forth in Section III below, the Medicare supplement benefit program satisfies the requisite ERISA "plan, fund or program" criteria and, therefore, constitutes an ERISA plan as a matter of law. Doc. 16, pp. 7 – 8.

welfare benefits coverage to employees and retirees are ERISA-governed benefits).[4] The purpose of the payroll practice exception is not to exclude <u>all</u> programs funded by employer assets, but rather to distinguish those programs under which employers fund ERISA plans from those programs where employers provide funds to pay wages.

Plaintiffs cite to a handful of cases they claim support a finding that the Medicare supplement benefits are subject to the payroll practice exception. Notably, however, none of these cases involve medical or retiree benefits. Instead, they all involve payment of the types of benefits expressly listed in the exception – *i.e.*, wage replacement benefits paid to employees unable to work due to sickness or disability or wage payments made to employees for unused vacation time.[5] Thus, Plaintiffs have failed to point to any legal authority directly supporting their theory that the Medicare supplement benefit program at issue here is a "payroll practice" excepted from coverage under ERISA.

## II. Plaintiffs' Focus on Form 5500s is a Red Herring.

Plaintiffs argue the Medicare supplement benefit program is not an ERISA plan because UHS never filed Form 5500s in connection with the program. Doc. 20, pp. 3 – 4. The argument

---

[4] *See also* Doc. 16, p. 9 n. 1 (citing cases explaining that payment of benefits out of an employer's general assets does not affect the threshold question of ERISA coverage).

[5] *See Stern v. Int'l Bus. Mach. Corp.*, 326 F.3d 1367 (11th Cir. 2003) (sickness and accident income plan providing wage replacement benefits to employees temporarily unable to work); *Massachusetts v. Morash*, 490 U.S. 107 (1989) (policy of paying terminated employees for unused vacation time at termination); *Franklin v. Blue Cross and Blue Shield of Fla., Inc., Short Term Disability Plan*, 2006 WL 2792893 (M.D. Fla. Sept. 27, 2006) (self-funded short-term disability policy providing wage replacement benefits to employees temporarily unable to work); *Bilheimer v. Fed. Exp. Corp.*, 2009 WL 1324202 (S.D. Fla. May 13, 2009) (short-term disability wage replacement benefits).

Two of the cases Plaintiffs cite – *Letner v. UNUM Life Ins. Co. of Am.*, *Letner v. Unum Life Ins. Co. of Am.*, 203 F. Supp. 2d 1291 (N.D. Fla. 2001) and *Edwards v. Prudential Ins. Co. of Am.*, 213 F. Supp. 2d 1376 (S.D. Fla. 2002) – do not address the payroll practice exception at all. And *Farr v. Bellsouth Telecomm. Inc.*, 2005 WL 8158594 (N.D. Ala. Sep. 22, 2005), held the disputed short-term disability plan did NOT meet the payroll practice exception and, therefore, <u>was</u> an ERISA plan.

is seemingly premised on the flawed assumption that a benefit plan or program can only be deemed an ERISA plan if an employer files a Form 5500 for the plan or program with the DOL. Yet even Plaintiffs concede that is not the law. *See* Doc. 20, p.3 ("Even if UHS had labeled this plan in a filing with the federal government as part of an ERISA medical plan, that label would not necessarily make it an ERISA plan.") (citing *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987)); *see also Donovan v. Dillingham*, 688 F.2d 1367, 1372 (11th Cir. 1982) (ERISA's reporting requirements are not prerequisites to coverage under Act); *Clark v. Unum Life Ins. Co. of Am.*, 95 F. Supp. 3d 1335, 1347-48 (M.D. Fla. 2015) (same). Thus, the purported lack of an ERISA Form 5500 filing does not preclude an ERISA plan finding by the Court.

Nonetheless, assuming the Form 5500 issue has any bearing on whether the Medicare supplement benefit program here is an ERISA plan, it is worth noting that the retiree medical coverage provided as part of the program <u>was</u> reported on Form 5500s filed with the DOL. *See* Exhibit A, attached hereto (exemplar Form 5500s filed for years 2018 through 2021 for the Health Benefit Plan for Employees of University Health, Inc.).[6] The insurers, insurance policies, and participants for these benefits are consistently referenced in the "Schedule As" to the attached Form 5500s. *See id.*, Ex. A, pp. 16, 43, 66, 85, 104, 112 of 115 (schedules referencing the United Healthcare (AARP) and Aetna-insured Medicare supplement coverage).[7]

---

[6] The Court may properly take judicial notice as to the existence of the referenced Form 5500s and the fact of their filing because they are publicly filed documents with the DOL and are readily available via the DOL website. *See Cervantes v. Invesco Holding Co*, 2019 WL 5067202, *11-12 (N.D. Ga. Sept. 25, 2019) (taking judicial notice of ERISA Form 5500s because "there can be little question as to [their] authenticity" and the fact that such statements or disclosures were thus publicly filed cannot be reasonably questioned) (citing to, among other cases, *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-77 (11th Cir. 1999)). The DOL Form 5500 search tool allows anyone searching the publicly available records to obtain Form 5500s filed since January 1, 2010.

[7] Since 2021, the benefits at issue have been provided to eligible retirees either pursuant to coverage issued by Aetna or pursuant to coverage issued by United Healthcare (AARP). Prior to 2021, United Healthcare (AARP) was the sole insurer for these benefits. As set forth in Defendants' opposition to the Remand

### III.     Plaintiffs Continue to Ignore the Proper ERISA Plan Analysis.

Plaintiffs now argue the Medicare supplement benefits are not ERISA-governed benefits because they (1) are not medical (or welfare) benefits, and (2) were not provided pursuant to any "specific written plan." Doc. 20, pp. 2 & 4. These arguments lack merit. Plaintiffs completely ignore the relevant criteria courts consider as part of the proper ERISA plan analysis.

As an initial matter, Plaintiffs' argument that the Medicare supplement benefits are not medical or welfare benefits ignores the cases cited by Defendants in their opposition, all of which establish otherwise. *See* Doc. 16, p. 7 (citing, for example, *Chamblin v. Towers Watson Delaware, Inc.*, 2018 WL 10593892, *2 (N.D. Ala. July 26, 2018) (holding that a healthcare reimbursement arrangement, specifically a Medicare supplement plan, is employee welfare benefit plan governed by ERISA); *Randol v. Mid-W. Nat. Life Ins. Co. of Tenn.*, 987 F.2d 1547, 1549-50 (11th Cir. 1993) (employer's payment of premiums for employees' health coverage was an employee welfare benefit plan under ERISA)). Indeed, there can be no serious dispute that Medicare supplement benefits are medical in nature and that they have been (and are currently being) provided to Plaintiffs to help them pay for their healthcare costs. Plaintiffs have already conceded these points. *See* Doc. 1-1 (Compl.), ¶ 17 & Ex. A; *see also* Doc. 17, p. 6 (citing case law explaining that Medicare supplement benefits are medical benefits).

Plaintiffs' "written plan" argument is another red herring. No written plan is required for an ERISA plan finding. *See* 29 U.S.C. § 1002(1) (defining "employee welfare benefit plan" as "*any* plan, fund *or* program . . .") (emphasis added); *Donovan*, 688 F.2d at 1372 (written plan document not required to support ERISA plan finding and is not a prerequisite to coverage under ERISA); *Clark*, 95 F. Supp. 3d at 1347-48 (ERISA "plan, fund, or program does not have to be

---

Motion (Doc 16, pp. 8-9) and as reflected in Exhibit A to Plaintiffs' Complaint (Doc. 1-1, pp. 9-17), UHS has paid the premiums for such medical coverage for eligible retirees directly to the insurance carrier(s).

written or otherwise formalized . . . what matters is whether the employer 'intended to establish or maintain a plan to provide benefits to its employees as part of the employment relationship'"); *Lipscomb v. Transac, Inc.*, 749 F. Supp. 1128, 1133 (M.D. Ga. 1990) ("Clearly, an ERISA plan and coverage may emerge where no writing is present"); *see also Williams v. Wright*, 927 F.2d 1540, 1543 (11th Cir. 1991) (ERISA coverage issues are to "be construed liberally") (citing *Donovan*). In any event, written plan documents do exist, including, for example, the election paperwork referenced in Mr. Belkoski's original affidavit (Doc. 16-1 & Doc. 16-5), the policies outlining the benefit program's eligibility criteria (referenced in Plaintiffs' Complaint), and the Medicare supplement policies themselves, issued by the medical insurance carriers, outlining the terms and conditions of the supplemental medical coverage.

The proper ERISA plan inquiry – which Plaintiffs continue to avoid – is not whether there exists a single formal written plan document but whether the challenged benefits were provided pursuant to a "plan, fund or program." *See* Doc. 16, pp. 6 – 8 (setting forth the requisite legal analysis and citing cases). As set forth in Defendants' opposition (Doc. 16, pp. 7 – 8), all four ERISA "plan, fund or program" criteria are satisfied here:

- The intended benefits are Medicare supplement benefits. *See* Doc. 16, p. 8 (citing Doc. 1-1 (Compl.), ¶¶ 5, 7 - 10).

- The intended beneficiaries are those employees employed by UHS prior to January 1, 2005, who had 30 years of service at the time of their termination of employment with UHS and are Medicare eligible. *See* Doc. 16, p. 8 (citing Doc. 1-1 (Compl.), ¶¶ 5, 7 & 9).

- The sources of financing the benefits are the premiums paid by UHS from its general assets. *See* Doc. 16, pp. 8 – 9 (citing Doc. 1-1 (Compl.), ¶¶ 7 – 9 & Ex. A, pp. 9 – 17 of 49 (showing annual premiums paid by UHS to Aetna and United carriers)).

- The procedure for receiving the benefits is that UHS provides eligible retirees the requisite election paperwork to enroll in the program, and then UHS pays the medical coverage insurance premiums directly to the medical insurance carriers,

Aetna and United. *See* Doc. 16, p. 9 (citing Doc. 1-1 (Compl.), Ex. A at pp. 9 – 17 of 49 <u>and</u> Doc. 16-1 (Belkoski Aff.), ¶ 18; Doc. 16-5 (Ex. D to Belkoski Aff.) (attaching benefit election paperwork)).

Thus, Plaintiffs' contrary assertions notwithstanding, there is ample factual and legal basis to support a finding that the Medicare supplement benefit program (which Plaintiffs contend constitutes a promise to provide Plaintiffs with free benefits for life) is an ERISA plan. ERISA therefore affords Plaintiffs the ability to pursue a claim seeking relief under its exclusive civil enforcement provision.

## CONCLUSION

For all of the reasons set forth above, and those set forth in Defendants' opposition to Plaintiffs' Remand Motion, Defendants respectfully request that the Court deny Plaintiffs' Remand Motion.

Dated: June 14, 2023.

        Respectfully submitted,

        <u>/s Edward H. Wasmuth, Jr.</u>
        Edward H. Wasmuth, Jr., Georgia Bar No. 739636
        SMITH GAMBRELL & RUSSELL, LLP
        1105 W. Peachtree Street, NE
        Suite 1000
        Atlanta, GA 30309
        404.815.3503
        ewasmuth@sgrlaw.com

        Emily E. Friedman
        (admission application in process)
        SMITH GAMBRELL & RUSSELL, LLP
        1105 W. Peachtree Street, NE
        Suite 1000
        Atlanta, GA 30309
        404.815.3948
        efriedman@sgrlaw.com

        *Attorneys for Defendants University Health*
        *Services, Inc. and Piedmont Healthcare, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on this day, I electronically filed the foregoing supplemental brief with the Clerk of Court using the CM/ECF system, which will send notification of such filing to attorneys of record.

Date: June 14, 2023.

*/s/ Edward H. Wasmuth, Jr.*
Edward H. Wasmuth, Jr., Georgia Bar No. 739636
SMITH GAMBRELL & RUSSELL, LLP
1105 W. Peachtree Street, NE
Suite 1000
Atlanta, GA 30309
404.815.3503
ewasmuth@sgrlaw.com

*Attorneys for Defendants University Health Services, Inc. and Piedmont Healthcare, Inc.*